IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PACIFIC CYCLE, INC.,

                Plaintiff,

v.

POWERGROUP INTERNATIONAL, LLC,
(a/k/a POWERGROUP
INTERNATIONAL,
INC.), TOMBERLIN AUTOMOTIVE
GROUP, INC. and MICHAEL
TOMBERLIN,

                Defendants.

OPINION AND ORDER

12-cv-529-wmc

This opinion and order addresses plaintiff's Motion in Limine No. 1, which seeks to strike the testimony of one of defendants' designated experts, Thomas Frazee. Frazee actually filed two expert reports in this case. Plaintiff objects to the relevance of any testimony with regard to the first and to the untimeliness and conclusory nature of the second.[1] For the reasons that follow, the court substantially agrees and will bar Frazee from testifying as an expert witness in this case except for the few opinions in his first report that bear on Pacific Cycle's claimed damage under its alter ego theory of liability.

I. BACKGROUND

Frazee is a Certified Public Accountant with Frazee Valuation and Forensics Consulting, LLC. The parties' deadline for disclosure of liability experts in this case was

---

[1] While proceedings against defendant Tomberlin Automotive Group are stayed by virtue of its having filed for bankruptcy in the Southern District of Georgia (dkt. #107), a trial will be held with respect to defendant Michael Tomberlin's claimed liability as PowerGroup's alter-ego. At a telephonic status conference on October 16, 2013, counsel for Mr. Tomberlin advised that he still intends to call Frazee as a witness in defense.

March 8, 2013, with respondent experts due by April 12, 2013. (Dkt. #10 at 2.) Frazee was timely disclosed as neither.

The deadline for disclosure of damage experts was July 3, 2013, with respondent experts disclosed by August 2, 2013. (*Id.* at 3.) Defendants apparently met the July 3rd deadline, disclosing Frazee as their expert in this case only with respect to "damages incurred by PowerGroup as a result of the License Agreement entered on April 16, 2009 with Pacific Cycle, Inc., and issues pertaining to Pacific Cycle's alter ego claims against Tomberlin Automotive Group, Inc. and Michael Tomberlin." (Dkt. #34.)[2]

From a review of various documents, including monthly income statements and balance sheets from defendants PGI and TAG, Frazee concluded in his first report that PowerGroup had incurred monetary losses and expenses in an effort to perform its obligations under its License Agreement with plaintiff. *Id*. at 3-5. In calculating these losses, Frazee included costs incurred for PGI's benefit by TAG, noting that the entities shared the costs associated with liability insurance, bank financing, a warehouse, office space and some employees. *Id*. at 3. Frazee also reviewed the January 2, 2011, Management Agreement entered into between PGI and TAG, concluding that the transfer of assets and liabilities that had occurred as a result of that agreement had not reduced the value of PGI's assets more than it had reduced the value of its liabilities. *Id*. at 4. Frazee also reviewed monthly journal entries made to PGI's accounting records associated with PGI's merger with Asian Ventures, from which he concluded that the merger resulted in an increase in PGI's net assets.

---

[2] Frazee's first report was filed with the court on July 15, 2013. (Dkt. #35.) This filing date was actually 12 days past the disclosure deadline of July 3, 2013, but Pacific Cycle does not challenge the timeliness of its disclosure.

On August 7 and August 21, 2013, respectively, defendants' outside accounting firms Edward Brown and Elliot Davis produced approximately 1,000 pages of defendants' accounting records in response to subpoenas issued by plaintiff. The parties' discovery deadline expired on August 30, 2013. That same day, Magistrate Judge Crocker issued his opinion and order granting partial summary judgment to plaintiff. (Dkt. #50.)

On September 6, 2013, Frazee filed a second report, purported to be a "supplement" to his initial report. (Dkt. #51.) In the September 6 report, Frazee reiterated his opinions concerning the financial impact on PGI of the Management Agreement with TAG and the merger with Asian Ventures. *Id*. at ¶¶6, 10. In addition, he offered a number of general assertions purported to be relevant to plaintiff's alter-ego theory, including the following:

> 1) there is no evidence that TAG or Tomberlin stripped PGI of assets or siphoned opportunities during the term of the License Agreement;
>
> 2) prior to the Management Agreement, TAG provided significant working capital support to PGI;
>
> 3) to Frazee's knowledge, TAG's involvement with PGI's performance under the License Agreement was not concealed from plaintiff;
>
> 4) PGI was owned 100% by Tomberlin while TAG had several owners between 2009 and 2012;
>
> 5) PGI and TAG had different outside public accountants that prepared their respective tax returns; and
>
> 6) Although PGI and TAG shared certain personnel and resources, the costs for shared personnel were accounted for in the accounting records of both parties.

*Id*. at ¶¶ 5, 7-9, 11-14. Frazee indicated that these so-called supplemental opinions had been informed by the court's order on summary judgment, the report from plaintiff's expert dated August 21, 2013, and the documents produced by defendants' outside accountants pursuant to Pacific Cycle's subpoenas. *Id*. at ¶1.

3

## II. ANALYSIS

Plaintiff argues that Frazee's first report is irrelevant because it speaks only to damages, which are no longer at issue after the magistrate judge's ruling on summary judgment. *See*, dkt. 50 at 31-32 (finding that PowerGroup had not shown a material dispute of fact concerning damages). While damages are for the most part no longer at issue, Frazee's damage opinions concerning the losses incurred by PGI and its efforts to stay afloat may have some limited relevance to the alter ego question that remains for trial.

For defendant Tomberlin to be found jointly and severally liable for plaintiff's contractual damages under the alter ego doctrine, the court must find in part that he used his alleged control over the company to commit fraud or other wrongdoing *and* that such wrongdoing caused plaintiff's damages. *See Consumer's Co-op of Walworth Cnty. v. Olsen*, 142 Wis. 2d 465, 484, 419 N.W.2d 211 (1988) (control of corporate entity and breach of duty must "proximately cause the injury or unjust loss complained of"); *Heyde v. Xtraman, Inc.*, 404 S.E.2d 607, 610 (Ga. Ct. App. 1991) (for alter ego theory to succeed, corporate form must have been "used as a subterfuge so that to observe it would work an injustice"; no alter ego liability where retrenchment and dissolution "had been instituted for legitimate business reasons before plaintiff was injured"). Frazee's opinion that any transfer of assets from one of Tomberlin's companies to another were done so that PGI could meet its obligations under the License Agreement may bear, if indirectly, on this damages question.

Accordingly, the court will allow Frazee to testify on direct consistent with his first report that concerning the losses sustained by PGI during the term of the License Agreement and the resulting effects of certain transactions between PGI, TAG and Asian Ventures did

not damage Pacific Cycle. The court will similarly permit Frazee to testify on any other damage issue addressed in his first report, including how PGI and TAG shared resources and tracked any exchange of resources in their accounting practices. Both of these opinions were disclosed in Frazee's initial report and may be relevant to the damages issue still before the court.

A more difficult question is what documents Frazee may properly rely upon during this testimony. At the time he served his initial report, Frazee had not reviewed the financial records produced by defendants' outside accounting firms. The first time he offered testimony based upon those subpoenaed records was when he filed his untimely second report on September 6th. As the pretrial conference order commanded: "Supplementation pursuant to Rule 26(e) is limited to matters raised in an expert's first report, must be in writing and must be served not later than five calendar days before the expert's deposition, or before the general discovery cutoff if no one deposes the expert." Dkt. 10, at 2. Here, no one deposed Frazee, so any supplementation was due on August 25, 2013, five days before the discovery cutoff.

Pursuant to Fed. R. Civ. P. 37(c)(1), untimely expert reports are automatically excluded unless the proponent can show the violation was justified or harmless. The determination of whether a particular violation of Rule 26(a) is justified or harmless is left to the broad discretion of the district court. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1231 (7th Cir. 1996). In making this determination, the district court should consider the surprise or prejudice to the blameless party, the ability of the offender to cure any resulting prejudice, the amount of disruption to the trial that would result from permitting the use of the evidence, and the bad faith involved in not producing the evidence at an earlier date.

*Bronk v. Ineichen*, 54 F.3d 425, 432 (7th Cir. 1995) (citing *Spray–Rite Svc. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245 (7th Cir. 1982)).

Here, defendants represent that Frazee could not have supplemented his report any earlier because he did not have the records from the outside accounting firms and the court had not yet decided the summary judgment motion. Neither of these reasons is even marginally persuasive. Defendants were in control of when Frazee received financial records from *their* own accountants. So far as it appears from the record, they chose the foolish or calculated (the court knows not which) course of doing nothing, instead apparently waiting to review the documents (or at least share them with Frazee) only after *plaintiff* subpoenaed them. Similarly foolish or tactical (or perhaps both) was defendants' decision to wait until the court ruled on their summary judgment motion *and* the close of discovery before supplementing the report, particularly since the alter-ego issue was not even raised in that motion. Such ultimately unwise decisions do not justify defendants' violation of the pretrial conference order. *See, e.g., Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1223 (7th Cir. 1990) (affirming denial of additional time for discovery when movant failed to conduct discovery during pendency of his motion to dismiss).

Even if the court were to ignore the untimeliness of Frazee's second supplemental report, it is anything but a "supplement" to his original damages opinions. As described above, it is a blatant attempt to offer new opinions bearing on Tomberlin's liability under an alter ego theory. Frazee was never disclosed as a liability expert and his testimony will not be expanded beyond those few damages opinions expressed timely in the first report.

Finally, in spite of defendants' arguments to the contrary, the court is not persuaded that this delay was harmless. Although defendants assert that they offered plaintiff the

6

opportunity to depose Frazee in order to cure any prejudice, at that time the parties were facing upcoming deadlines for motions *in limine* and pretrial submissions, with the case set to be tried on October 7. Plaintiff was not (and still is not) required to abandon its trial preparation efforts to accommodate defendants' post-discovery supplementation based upon financial records that defendants could have obtained even before this case's inception. Further, to excuse defendants' lack of diligence would render meaningless the pretrial conference order, which advised the parties that they must "attend diligently to their obligations in this lawsuit" and that "[f]ailure to do so shall have consequences," including "the court striking the testimony of a party's expert pursuant to Rule 37." (Dkt. #10, at 1-2.)

ORDER

Accordingly, IT IS ORDERED that plaintiff's motion *in limine* to preclude testimony or other evidence from defendants' expert, Thomas Frazee, is GRANTED in substantial part and DENIED only to the extent that Frazee may render relevant damages opinions disclosed in his first expert report as set forth above.

Entered this 23rd day of October, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
Chief Judge